**Dexter Arthur JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–08–00369–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 12, 2009.

---

**10.** *Loshe v. State,* 160 Tex.Crim. 561, 272 S.W.2d 517, 520 (1954).

**11.** *Id.*

**12.** *Id.*

**13.** *See Gonzalez–Lopez,* 548 U.S. at 150, 152, 126 S.Ct. at 2564, 2566.

Peyton Peebles III, Houston, for appellant.

Dan McCrory, Houston, for state.

Panel consists of Justices FROST, BROWN, and BOYCE.

## OPINION

WILLIAM J. BOYCE, Justice.

Appellant Dexter Arthur Jackson challenges his conviction for interference with an emergency telephone call. After the jury found appellant guilty, the trial court assessed punishment as confinement for 300 days. Appellant contends that (1) the evidence is legally and factually insufficient to support the jury's finding that the telephone call was an emergency call; and (2) the trial court erred in denying his

motions for mistrial following the complainant's references to appellant's previous incarceration. We affirm.

## Background

Appellant and the complainant began dating in October 2004. Shortly thereafter, appellant moved in with the complainant and her two children. This living arrangement continued after the romantic relationship between appellant and the complainant ended in 2006. The complainant ceased working after August 27, 2007. Appellant provided income to meet the financial needs of the complainant and her children after she stopped working.

Appellant and the complainant got into an argument on November 4, 2007, when appellant told the complainant that he no longer wanted to provide income for her and her children. The complainant ordered appellant to move out of the apartment they shared. Appellant gathered boxes and began packing up his belongings while continuing to argue with the complainant. The complainant said she would call the police if appellant did not leave. After the complainant dialed 9–1–1, appellant knocked the telephone out of her hand. Police officers responded to this "hang up" call. Before the officers arrived, the complainant called 9–1–1 again.

Appellant was charged by information with assault on a household member and interference with an emergency telephone call based on his actions in connection with the first call. He was not charged in connection with the second call.

At trial, Houston Police Officer Cedric Harper testified that the complainant told him at the scene that appellant "assaulted her during the verbal argument, and she tried to dial 911 and he slapped the phone away from her hand." Officer Harper also testified that the complainant was crying when he arrived at the scene, and that she left her apartment "to get away from [appellant]" after placing her first 9–1–1 call.

The complainant testified that when she first called 9–1–1, appellant said, "[B]itch, you going to call the cops, I'm going to give you something to call the cops for." The complainant further testified that appellant jumped on top of her and knocked the telephone from her hand after yelling at her when she first called 9–1–1. The complainant stated that she called 9–1–1 to have appellant removed from her apartment, and because "I thought [appellant] was going to hurt me." The complainant testified that appellant had assaulted her approximately one year before this argument, and that on November 4, 2007, appellant demonstrated "a rage in him that night that I never seen before."

The jury found appellant not guilty of assault and guilty of interference with an emergency telephone call. The trial court sentenced appellant to confinement for 300 days in a judgment signed on April 2, 2008. Appellant appeals from this judgment.

## Analysis

An individual commits an offense if the individual knowingly prevents or interferes with another individual's ability to place an emergency telephone call or to request assistance in an emergency from a law enforcement agency. Tex. Penal Code Ann. § 42.062(a) (Vernon Supp. 2008). The statutory definition of "emergency" includes a condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault. *Id.* § 42.062(d).

An individual commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another ... [or] intentionally or knowingly threatens an-

other with imminent bodily injury." *Id.* § 22.01(a)(1), (2) (Vernon Supp. 2008).

Appellant challenges the legal and factual sufficiency of the evidence supporting the finding that the complainant's first call to 9–1–1 was an emergency call. Additionally, appellant challenges the trial court's denial of his motions for mistrial. We address each challenge in turn.

## I. Legal Sufficiency

■ In reviewing legal sufficiency of the evidence, an appellate court will examine the evidence in the light most favorable to the State to determine whether any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999). The court does not sit as a thirteenth juror and may not re-evaluate the weight and credibility of the record evidence or substitute its judgment for that of the fact finder. *Dewberry,* 4 S.W.3d at 740.

■ Reconciliation of conflicts in the evidence is within the exclusive province of the fact finder. *See Mosley v. State,* 983 S.W.2d 249, 254 (Tex.Crim.App.1998) (en banc). The appellate court's duty is not to reweigh the evidence, but to serve as a final due process safeguard ensuring only the rationality of the fact finder. *See Williams v. State,* 937 S.W.2d 479, 483 (Tex.Crim.App.1996). An appellate court faced with a record of facts that supports conflicting inferences must presume—even if not obvious from the record—that the finder of fact resolved any such conflicts in favor of the State, and must defer to that resolution. *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781.

Appellant's legal sufficiency challenge focuses on whether the first 9–1–1 call was an "emergency" call as defined by statute.

Officer Harper testified that the complainant told him at the scene that appellant "assaulted her during the verbal argument, and she tried to dial 911 and he slapped the phone away from her hand." Officer Harper also testified that the complainant was crying when he arrived at the scene, and that she left her apartment "to get away from [appellant]" after placing her first 9–1–1 call. The complainant testified that when she first called 9–1–1, appellant said, "[B]itch, you going to call the cops, I'm going to give you something to call the cops for." The complainant further testified that appellant jumped on top of her and knocked the telephone from her hand after yelling at her when she called 9–1–1. The complainant stated that she called 9–1–1 in part because "I thought [appellant] was going to hurt me." She also testified that appellant had assaulted her approximately one year before this argument, and that on November 4, 2007, appellant demonstrated "a rage in him that night that I never seen before."

Appellant argues that this evidence is legally insufficient to support the jury's finding that the complainant's first 9–1–1 call was an emergency call because it fails to establish that the complainant was in fear of an imminent assault before placing the first call. Appellant attempts to limit the time frame of the testimony about the complainant's fear of an imminent assault to the period after the first 9–1–1 call and before the second one. Based on this limitation, appellant argues that the complainant's first 9–1–1 call was not prompted by an "emergency" because her only motivation was to obtain police assistance in removing appellant from the apartment as quickly as possible.

The record is not entirely clear regarding the timeline of events on November 4, 2007. That being the case, a rational fact

finder could conclude that the testimony described the complainant's fear of imminent assault before and during the first 9–1–1 call. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Mosley*, 983 S.W.2d at 254. Viewing the evidence in the light most favorable to the jury's verdict, the jury could have found beyond a reasonable doubt that the 9–1–1 call with which appellant interfered was an emergency telephone call because the complainant was in fear of imminent assault before and while making the first call. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Dewberry*, 4 S.W.3d at 740. This conclusion is underscored by *In the Matter of J.A.G.*, No. 03–05–00004–CV, 2006 WL 1126194 (Tex. App.-Austin Apr. 28, 2006, no pet.) (mem. op.).

The complainant in *J.A.G.* called 9–1–1 after feeling intimidated when her "out of control" grandson, who was 5′11″ and 175 pounds, refused to get ready for school and locked himself in an upstairs room after taking his grandmother's keys "so that she could not go anywhere." *Id.* at *1. At a hearing to adjudicate the grandson's delinquency, the responding officer testified that the grandmother was crying and appeared distraught, angry, and upset when he arrived. *Id.* The officer further testified that the grandmother told him she called 9–1–1 because she was intimidated by her grandson, and that her grandson took the phone from her and disconnected the 9–1–1 call once the grandmother told him she was talking to 9–1–1 personnel. *Id.* The officer also testified that the grandson had taken the grandmother's keys from her and that she fled the house to call 9–1–1 from a neighbor's home. *Id.*

The grandmother, testifying at the hearing as a hostile witness, denied feeling threatened or intimidated by her grandson. *Id.* The trial court found the testimony of 9–1–1 personnel and the responding officer credible while finding the grandmother's testimony "credible in parts and incredible in parts." *Id.* The trial court then found that the grandson had engaged in delinquent conduct and placed him on probation for eight months. *Id.* Applying the same sufficiency standards used in criminal cases, the Austin Court of Appeals affirmed the trial court's judgment and held that the evidence was legally and factually sufficient to support the trial court's finding that the 9–1–1 call with which the grandson interfered was an emergency call. *Id.* at *1–*4.

■ Here, as in *J.A.G.*, the evidence is legally sufficient to support the jury's finding that the complainant's first call to 9–1–1 was an emergency telephone call based on Officer Harper's testimony and the complainant's testimony. Officer Harper testified that the complainant (1) told him that appellant "assaulted her during the verbal argument, and she tried to dial 911 and he slapped the phone away from her hand;" (2) was crying when he arrived at the scene; and (3) left her apartment "to get away from [appellant]" after placing her first 9–1–1 call. The complainant testified that (1) appellant said, "[B]itch, you going to call the cops, I'm going to give you something to call the cops for" when she called 9–1–1; (2) appellant jumped on top of her and knocked the telephone from her hand after yelling at her when she called 9–1–1; (3) she called 9–1–1 in part because "I thought [appellant] was going to hurt me;" (4) appellant had assaulted her approximately one year before this argument; and (5) on November 4, 2007, appellant demonstrated "a rage in him that night that I never seen before." A rational jury could conclude that this testimony was credible and established that the complainant was in fear of an imminent assault at the time she placed her first 9–

1–1 call. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Mosley,* 983 S.W.2d at 254; *cf. Matlock v. State,* No. 12–05–00413–CR, 2006 WL 2106951, at *2 (Tex.App.-Tyler July 31, 2006, no pet.) (mem. op., not designated for publication) (reversing conviction for interference with an emergency telephone call and acquitting appellant because "[t]he record before us is devoid of any evidence that [the complainant] was afraid of Appellant").

We overrule appellant's issue regarding legal sufficiency of the evidence supporting the jury's finding that the complainant's first call to 9–1–1 was an emergency telephone call.

## II. Factual Sufficiency

Appellant next challenges the factual sufficiency of the evidence establishing that the complainant's 9–1–1 call with which appellant interfered was an emergency telephone call.

■ When conducting a factual sufficiency review, an appellate court must determine (1) whether the evidence introduced to support the verdict is "so weak" that the fact finder's verdict seems "clearly wrong and manifestly unjust," and (2) whether, considering conflicting evidence, the fact finder's verdict is nevertheless against the great weight and preponderance of the evidence. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006). We view the evidence in a neutral light in a factual sufficiency review. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000) (en banc).

■■ In order to declare that an evidentiary conflict justifies a new trial, an appellate court must rely on some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. *See Lancon v. State,* 253 S.W.3d 699, 706–

07 (Tex.Crim.App.2008). An appellate court should not intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex.Crim.App.2002).

■ The jury may choose to believe or disbelieve any portion of the testimony. *Bargas v. State,* 252 S.W.3d 876, 887 (Tex. App.-Houston [14th Dist.] 2008, no pet.) (citing *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986) (en banc)). Due deference must be given to the fact finder's determinations concerning the weight and credibility of the evidence, and reversal of those determinations is appropriate only to prevent the occurrence of a manifest injustice. *Martinez v. State,* 129 S.W.3d 101, 106 (Tex.Crim.App.2004).

In arguing factual sufficiency, appellant focuses on the complainant's testimony that she first called 9–1–1 in part because she wanted police to assist her in removing appellant from the apartment. Appellant highlights a portion of Officer Harper's police report, which was read to the jury. According to the report, the "complainant then stated after she picked up the phone and started dialing 911 ... the suspect approached her, grabs the back of her head, started pulling her hair, jerking extensions out of her hair, and pushed the complainant on top of the couch ...." Appellant contends that this report establishes he did not assault the complainant until *after* she made her first 9–1–1 call. According to appellant, no direct or circumstantial evidence suggests that the complainant feared imminent assault when she placed her first 9–1–1 call. In addition, appellant asserts that Officer Harper's testimony likely caused confusion as to whether he relayed events in the order in which they actually occurred.

We conclude that the record contains factually sufficient evidence to support the

jury's finding that the complainant's first 9–1–1 call was an emergency telephone call based on the following testimony: (1) Officer Harper testified that the complainant told him that appellant "assaulted her during the verbal argument, and she tried to dial 911 and he slapped the phone away from her hand;" (2) Officer Harper testified that the complainant was crying when he arrived at the scene, and that she left her apartment "to get away from [appellant]" after placing her first 9–1–1 call; (3) the complainant testified that appellant said, "[B]itch, you going to call the cops, I'm going to give you something to call the cops for" when she called 9–1–1; (4) the complainant testified that appellant jumped on top of her and knocked the telephone from her hand after yelling at her when she called 9–1–1; (5) the complainant testified that she called 9–1–1 in part because "I thought [appellant] was going to hurt me;" and (6) the complainant testified that appellant had assaulted her approximately one year before this argument, and that on November 4, 2007 appellant demonstrated "a rage in him that night that I never seen before." The jury was free to make its own determination regarding the weight and credibility of this evidence as it pertained to the timeline of events on November 4, 2007, and whether the complainant feared an imminent assault when she placed her first 9–1–1 call. *See In the Matter of J.A.G.*, 2006 WL 1126194, at *1–*4.

Viewing the evidence in this case in a neutral light, we conclude that it is factually sufficient to justify the jury's finding that the 9–1–1 call with which appellant interfered was an emergency telephone call. *See Johnson*, 23 S.W.3d at 11. The jury's finding is neither clearly wrong nor manifestly unjust. *See Lancon*, 253 S.W.3d at 706–07; *Watson*, 204 S.W.3d at 414–15; *Martinez*, 129 S.W.3d at 106.

We overrule appellant's issue regarding factual sufficiency of the evidence supporting the jury's finding that the complainant's first call to 9–1–1 was an emergency telephone call.

## III. Motions for Mistrial

■ Appellant challenges the trial court's denial of two motions for mistrial following the complainant's references during her testimony to appellant's previous incarceration. We review the denial of a motion for mistrial for clear abuse of discretion. *Rojas v. State*, 986 S.W.2d 241, 250–51 (Tex.Crim.App.1998). A trial court does not abuse its discretion unless its decision falls outside the zone of reasonable disagreement. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App.1997) (en banc).

■ The "traditional and preferred procedure for a party to voice its complaint" at trial is to undertake the following steps in sequence: (1) object; (2) request an instruction for the jury to disregard; and (3) move for a mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim.App.2004) (en banc); *see also* Tex. R. App. P. 33.1(a). "However, this sequence is not essential to preserve complaints for appellate review." *Young*, 137 S.W.3d at 69. "The essential requirement is a timely, specific request that the trial court refuses." *Id.* The "timely, specific request" may be a request for mistrial in the first instance. *Id.* at 69–70. "[W]hen a party's first action is to move for mistrial ... the scope of appellate review is limited to the question whether the trial court erred in not taking the most serious action of ending the trial ...." *Id.* at 70. "[I]n other words, an event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a judgment on an ap-

peal by the party who did not request these lesser remedies in the trial court." *Id.*

■ The complainant twice referred to appellant's previous incarceration during her testimony. The first instance occurred during direct examination, when the complainant testified that appellant said, "[B]itch, you trying to send me back to jail or something?" Appellant objected and asked to approach the bench. Once at the bench, appellant moved for a mistrial without first obtaining a ruling on his objection or requesting a curative instruction. The trial court denied the first motion for mistrial.

■ The second instance occurred when the complainant made the following statement during cross-examination: "I didn't want to see [appellant] go back to jail .... I never wanted him to go back to jail 'cause I knew he had gotten out of prison on a 13 year sentence .... I never wanted him to go back to jail." Following the complainant's second reference to appellant's previous incarceration, appellant objected and moved for a mistrial without obtaining a ruling on his objection. The trial court denied appellant's second motion for mistrial and asked appellant if he wanted an instruction to disregard. Appellant accepted the trial court's offer to issue a curative instruction to the jury, and the jury was so instructed.

■ Unless clearly calculated to inflame the minds of the jury or of such damning character as to make it impossible to remove the harmful impression from the jurors' minds, a witness's reference to a defendant's criminal history, standing alone, generally is cured by a prompt instruction to disregard. *See Ladd v. State,* 3 S.W.3d 547, 571 (Tex.Crim.App.1999) (instruction to disregard cured witness's improper reference to defendant's multiple juvenile arrests); *Kemp v. State,* 846 S.W.2d 289, 308 (Tex.Crim.App.1992) (en banc) (witness's reference to defendant having "recently been released from the penitentiary" cured by instruction to disregard); *Nobles v. State,* 843 S.W.2d 503, 514 (Tex.Crim.App.1992) (en banc) (witness's statement that defendant "didn't want to go back to prison" cured by prompt instruction to disregard). "A grant of a motion for mistrial should be reserved for those cases in which ... an instruction to disregard could not cure ... the prejudice stemming from an event at trial—i.e., where an instruction would not leave the jury in an acceptable state to continue the trial." *Young,* 137 S.W.3d at 69.

This is not such a case. Nothing in the record here indicates that the complainant's two references to appellant's previous incarceration clearly were calculated to inflame the minds of the jury, or were of such damning character as to make it impossible to remove the harmful impression from the jurors' minds. The references mirrored those typically cured by an instruction to disregard. *See Ladd,* 3 S.W.3d at 571; *Kemp,* 846 S.W.2d at 308; *Nobles,* 843 S.W.2d at 514. Because an instruction directing the jury to disregard the complainant's references to appellant's previous incarceration would have adequately addressed appellant's first objection, the trial court did not err by denying appellant's first motion for mistrial. *See Young,* 137 S.W.3d at 70. Because an appropriate curative instruction was administered in response to appellant's second objection, the trial court did not err by denying appellant's second motion for mistrial. *See Ladd,* 3 S.W.3d at 571; *Kemp,* 846 S.W.2d at 308; *Nobles,* 843 S.W.2d at 514.

We overrule appellant's issue regarding the denial of his motions for mistrial.

## Conclusion

The trial court's judgment is affirmed.