

**NUMBER 13-10-00667-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – CORPUS CHRISTI**

---

**RAYMOND TRENT PETEREK,**                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                              **Appellee.**

---

**On appeal from the 24th District Court
of DeWitt County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Perkes**

Appellant, Raymond Trent Peterek,[1] appeals from the trial court's judgment

revoking his community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23

---

[1] This case comes to us on appeal from DeWitt County. Same appellant also brings a separate appeal out of Goliad County (13-10-00494-CR). The two cases are similar; in both appellant argues the same three grounds for reversal of his community supervision revocation. But, because the two appeals originate from two separate counties and trials, which included different, albeit similar, testimony, we treat the two appeals as separate. Accordingly, we restrict our review of this appeal to only the testimony and evidence produced in this case's record.

(West Supp. 2011). By two issues, appellant contends that the evidence is insufficient to support the trial court's finding that appellant violated the conditions of his community supervision by: (1) knowingly interfering or interrupting an emergency call;[2] and (2) possessing a firearm. By a third issue, appellant contends that there is a fatal variance between the allegations in the State's motion to revoke community supervision regarding the grounds that appellant possessed a firearm and the evidence produced before the trial court on this allegation. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

A grand jury indicted appellant for assault-family violence.[4] The indicted offense was enhanced to a third-degree felony because appellant had a prior conviction.[5] Appellant pleaded guilty, and pursuant to a plea bargain, the trial court placed him on deferred adjudication community supervision for five years.

The trial court subsequently revoked appellant's community supervision after he pleaded true to allegations that he violated the terms of the community supervision, and, pursuant to a plea bargain, the trial court sentenced him to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. A few months later, the trial court placed appellant on a second term of community supervision for ten years under the

---

[2] *See* TEX. PENAL CODE ANN § 42.062(a) (West 2011).

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4. In this case, the first issue on appeal is dispositive. We, therefore, only relate the facts that are relevant to that issue. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Herrera v. State*, 951 S.W.2d 197, 199 (Tex. App.—Corpus Christi 1997, no pet.); *see also* TEX. R. APP. P. 47.1, 47.4.

[4] *See* TEX. PENAL CODE ANN § 22.01(a)(1)–(2).

[5] *See* TEX. PENAL CODE ANN § 22.01(b)(2)(A).

2

"shock community supervision" provisions of section 42.12 of the Texas Code of Criminal Procedure.[6]

Almost three years later, the State filed a motion to revoke appellant's community supervision based upon alleged violations of his community supervision conditions and proceeded to a hearing before the trial court on the following two allegations:

> Defendant, Raymond Trent Peterek[,] has violated Condition Number One (1) of his probation, in that, on or about April 1, 2010, in Goliad County, Texas, said Defendant committed the criminal offense of interfering with an emergency call, to wit: taking the telephone away from Melissa Peterek while trying to dial 911 for an assault.

> Defendant Raymond Trent Peterek has violated Condition Number Twelve (12) of his probation in that, on or about April 1, 2010, said Defendant was in possession of a firearm, to wit: a rifle.

Appellant pleaded "not true" to both allegations.

During the hearing, Melissa Allison, appellant's common-law wife, testified that on April 1, 2012, she and appellant got into a heated argument. According to Allison,[7] she attempted to end the argument because her daughter was present. Appellant, however, cornered her "between the sink and the stove" and got "loud and angry." She escaped by ducking under his arm. Appellant pursued Allison. She testified at the hearing that "I was frightened." As he pursued her, Allison said that "[h]e continued to yell. My little girl was screaming. And I ran into the bedroom. He came after me. I grabbed the phone and I dialed 911." When asked at the hearing why she dialed 9-1-1, Allison responded, "Because I was afraid." Later, on cross-examination, she stated, "I was fearful of him

---

[6] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 6.

[7] Melissa Allison introduced herself and was identified as "Melissa Allison" throughout appellant's trial. She did confirm during her testimony that she is sometimes known as Melissa Peterek. For convenience, we use her name as it first appears in her testimony and as it appears in the heading to her testimony in the record.

[appellant]," and "I called them [9-1-1] because I was afraid. I hadn't thought that far into it. I just—at the moment I was scared and I felt like I needed help."

Allison further testified that appellant grabbed the phone away from her before she could talk to the 9-1-1 responder. She stated, "I called them right in front of him. He saw me dial the 911 because I was fighting him for the phone when I was doing it." During the same testimony, Allison emphasized, "I grabbed the phone. He was right behind me. He was wrestling me for the phone." After further questioning, she said, "he was right behind me when I grabbed the phone and I started trying to call. And then he grabbed me and started trying to get the phone away from me" and "finally he did get it away." But, when asked whether appellant knew that she was making an emergency call, Allison answered, "I don't know for absolute certain."

After appellant grabbed the phone away from Allison, she ran out the front door of the house and to her father's travel trailer, which was located nearby and on the same property as Allison's home. She told her father to call 9-1-1, which he did despite the requests from appellant, who had followed Allison to her father's trailer, not to call law enforcement. Shortly thereafter, police officers arrived.

Allison testified that appellant did not assault, hit, or injure her on this occasion. When defense counsel asked her, "[T]here wasn't any need for an emergency at that time [time of the phone call]?" she responded, "I felt there was." Allison also alleged that appellant had assaulted her on three previous occasions, but she never reported them.

The following exchange between Allison and the trial court occurred before she finished her testimony:

4

THE COURT:    When you were in the kitchen, did you feel threatened? Was the—by your interpretation, was the behavior that he exhibited aggressive toward you?

THE WITNESS:  Yes, sir.

THE COURT:    And when you went into the bedroom and made the phone call, you said you were making a call and he took the phone away from you. Did you offer him the phone or did he snatch it out of your hand or how did that happen?

THE WITNESS:  He grabbed my arm and I—we kind of struggled with it a little bit and he got it away from me.

THE COURT:    Okay. Did he grab—when he grabbed your arm, was he having physical contact with his hand to your arm?

THE WITNESS:  When he was trying to get the phone, yes, sir.

Randy Zaruba, a community-supervision officer who supervised appellant when his case was transferred to Victoria County, affirmed that it would be a violation of appellant's community supervision to commit a criminal offense. At the conclusion of the hearing, the trial court found the State's two allegations to be true and sentenced appellant to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. This appeal followed.

## II.  STANDARD OF REVIEW

We review a trial court's order revoking community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (en banc) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). The State bears the burden of showing by a preponderance of the evidence that the defendant committed a violation of his community-supervision conditions. *Cobb v. State*, 851 S.W.2d 871, 873

5

(Tex. Crim. App. 1993); *Jones v. State*, 112 S.W.3d 266, 268 (Tex. App.—Corpus Christi 2003, no pet.). If the State does not meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

Proof by a preponderance of the evidence of any one of the alleged violations of the community-supervision conditions is sufficient to support a revocation order. *Moore*, 605 S.W.2d at 926; *Herrera*, 951 S.W.2d at 199. The trial court is the trier of facts in a revocation proceeding and is the sole judge of the credibility of the witnesses and the weight to be given to the testimony. *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We examine the record of the revocation proceeding in the light most favorable to the trial court's ruling. *Id.*

## III. APPLICABLE LAW

Under the Texas Penal Code, it is an offense to knowingly prevent or interfere with a person's ability to place an emergency telephone call. *See* TEX. PENAL CODE ANN. § 42.062(a) (West 2011). The Texas Penal Code defines "knowingly" in the following manner:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(b). An "emergency" is:

> A condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault or in which property is or is reasonably believed by the individual making the telephone call to be in imminent danger of damage or destruction.

6

*Id.* § 42.062(d). A reasonable belief is one "that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(42). Assault is the intentional, knowing, or reckless cause or threat of bodily injury to another, or the intentional or knowing physical contact with another that is known or reasonably believed to be offensive or provocative to that person. *Id.* § 22.01(a).

## IV. DISCUSSION

Appellant contends that the trial court abused its discretion in finding that he knowingly interfered or interrupted an emergency call because the evidence was insufficient to support both the existence of an emergency and the knowing interference or interruption. We disagree.

In support of his contention that no evidence supports the finding that an emergency existed, appellant relies on *Matlock v. State*, No. 12-05-00413-CR, 2006 Tex. App. LEXIS 6753 (Tex. App.—Tyler Jul. 31, 2006, no pet.) (mem. op., not designated for publication). In *Matlock*, our sister appellate court ruled that the evidence was insufficient to support the finding that an emergency existed. *See id.* at *8. The *Matlock* Court premised its conclusion on the fact that the record included no direct testimony of fear of imminent assault. *See id.* at *5–8. In that case, the defendant's wife called 9-1-1 because she heard her child say, "Daddy," which indicated that her husband, who lived apart from her at that time, was in the house. *Id.* at *2. With her cordless telephone in hand, she walked into the hall, and the defendant grabbed the telephone away from her and hung up. *Id.* The appellate court noted that the couple had no history of violence. *Id.* at *6. More importantly, the *Matlock* Court recognized that "the record before us is

7

devoid of any evidence that Lisa [the defendant's wife] was afraid of [the defendant]." *Id.* The appellate court emphasized, "[T]he record includes no direct evidence that Lisa was afraid of [the defendant] nor does the record contain any facts or circumstances from which we might infer that when Lisa made the call she reasonably feared she was in danger of imminent assault." *Id.* at *7.

Here, unlike in *Matlock*, there is evidence that appellant's wife was afraid. Therefore, the trial court did not abuse its discretion in finding that an emergency existed at the time Allison called 9-1-1. The trial court heard Allison testify that appellant cornered her, was "loud and angry," and pursued her when she ran away. It also heard her describe how she felt at the time she called 9-1-1; she expressed, "I was frightened," "I was afraid," I was fearful of him," and "I called them because I was afraid . . . I was scared and I felt like I needed help." Allison further testified that she had felt that an emergency was present when she called 9-1-1. When the trial court later asked her whether she had felt threatened, she responded in the affirmative. She also testified that she had a history of being assaulted by appellant.

Given the foregoing testimony, we hold that the trial court did not abuse its discretion in finding that an emergency existed because there was sufficient evidence to support that finding by a preponderance of the evidence. *See Jones*, 112 S.W.3d at 268; *Canseco*, 199 S.W.3d at 439 (holding trial court is sole judge of witness credibility and weight given testimony); *see also Jackson v. State*, 287 S.W.3d 346, 350–52 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (finding evidence sufficient to support emergency existed because, in part, complainant testified, "I thought [the defendant] was

8

going to hurt me" and because the defendant assaulted her approximately one year before the argument at issue).

We also hold that the trial court did not abuse its discretion in finding that appellant knowingly interfered or interrupted Allison's emergency telephone call. Allison's testimony indicated that appellant was right behind her when she dialed 9-1-1, and at one point she even said that he saw her dial 9-1-1 while he was wrestling the telephone away from her. Allison did acknowledge that she did not know with absolute certainty that appellant knew she had dialed 9-1-1. She described, however, in detail how appellant grabbed her, wrestled with her, and finally snatched the telephone away from her.

In general, whether a person acted knowingly must usually be inferred from the facts and circumstances. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *overruled in part on other grounds by Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992); *Lima v. State*, 107 S.W.3d 774, 776 (Tex. App.—Corpus Christi 2003, no pet.). The factfinder may infer knowledge from any facts in evidence that tend to prove the existence of such a culpable mental state. *See Lima*, 107 S.W.3d at 776 (citing *Hernandez*, 819 S.W.2d at 810). We hold that the trial court had sufficient evidence to infer appellant knowingly interfered or interrupted his wife's emergency telephone call. *See Canesco*, 199 .S.W.3d at 439.

Because the trial court had sufficient evidence to find by a preponderance of the evidence that an emergency existed and that appellant knowingly interfered with or interrupted an emergency telephone call, we overrule appellant's first issue on appeal. Given that only one finding is necessary to support a revocation of community

supervision, it is unnecessary for us to address appellant's other two issues. *See* TEX.

R. APP. P. 47.1, 47.4; *Moore*, 605 S.W.2d at 926; *Herrera*, 951 S.W.2d at 199.

### V.  CONCLUSION

We affirm the trial court's judgment revoking appellant's community supervision.

_____
GREGORY T. PERKES
Justice

Do not publish.   TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of August, 2012.