

# NUMBER 13-10-00494-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**RAYMOND TRENT PETEREK,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 24th District Court
### of Goliad County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Raymond Trent Peterek,[1] appeals from the trial court's judgment

revoking his community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23

---

[1] This case comes to us on appeal from Goliad County. Same appellant also brings a separate appeal out of DeWitt County (13-10-00667-CR). The two cases are similar; in both appellant argues the same three grounds for reversal of his community supervision revocation. But, because the two appeals originate from two separate counties and trials, which included different, albeit similar, testimony, we treat

(West Supp. 2011). By two issues, appellant contends that the evidence is insufficient to support the trial court's finding that appellant violated the conditions of his community supervision by: (1) knowingly interfering with or interrupting an emergency call;[2] and (2) possessing a firearm. By a third issue, appellant contends that there is a fatal variance between the allegations in the State's motion to revoke community supervision regarding the grounds that appellant possessed a firearm and the evidence produced before the trial court on this allegation. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

A grand jury indicted appellant for theft of property valued at $1,500 or more and less than $20,000, which is a state-jail felony.[4] Appellant pleaded guilty, and, pursuant to a plea bargain, the trial court placed him on deferred-adjudication community supervision for a five-year term. The State subsequently filed a motion to revoke appellant's unadjudicated community supervision based on alleged violations of the community-supervision conditions, and proceeded to a hearing before the trial court on the following three allegations:

> On or about April 1, 2010, in Goliad County, Texas, said Defendant committed the criminal offense of interfering with an emergency call, to-wit:

the two appeals as separate. Accordingly, we restrict our review of this appeal to only the testimony and evidence produced in this case's record.

[2] *See* TEX. PENAL CODE ANN. § 42.062(a) (West 2011).

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4. In this case, the first issue on appeal is dispositive. We, therefore, only relate the facts that are relevant to that issue. *See Id. at.* R. 47.1, 47.4; *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Herrera v. State*, 951 S.W.2d 197, 199 (Tex. App.—Corpus Christi 1997, no pet.).

[4] *See* TEX. PENAL CODE § 31.03(a), (e)(4)(A).

2

taking the telephone away from Melissa Peterek while [she was] trying to dial 911 for assault[;]

On or about April 1, 2010, in Goliad County, Texas, said Defendant committed the federal criminal offense of possession of a firearm by a felon under indictment and after conviction[; and]

Petitioner would show that Defendant Raymond Trent Peterek has violated Condition Number Twelve (12) of his probation in that, on or about April 1, 2010, said Defendant was in possession of a firearm, to-wit: a rifle.

Appellant pleaded "not true" to all three allegations.

During the hearing, Melissa Jean Allison,[5] appellant's common-law wife, testified that on April 1, 2012, she and appellant got into a heated argument. According to Allison, she attempted to end the argument when her four-year-old daughter entered the room, but appellant cornered Allison between the sink and the stove and would not let her pass. Allison escaped by ducking under his arm. She testified, "[H]e came after me. I felt like he was chasing me down. I ran into the bedroom, into our bedroom, and I grabbed the phone and I called 911." She did not tell appellant that she was calling 9-1-1.

Allison testified that she dialed 9-1-1, "Because I felt threatened." She noted that appellant did not hit, injure, touch, or assault her on this occasion, and that he did not verbally threaten her. But, when asked whether she felt like it was an emergency that prompted her 9-1-1 call, she responded, "I did." After further questioning, she

---

[5] At appellant's trial, Melissa Jean Allison identified herself as "Melissa Jean Allison." Although she was addressed as "Ms. Allison" and "Mrs. Peterek" interchangeably during her testimony, she noted at the beginning of her testimony that she had never gone by the name "Melissa Peterek." When asked, "You're not ever known as Melissa Peterek?" she responded, "No. I am common law married to Trent Peterek, but I've never gone by the last name of Peterek." Moreover, she emphasized that no one addressed her as "Melissa Peterek." Given that her testimony is headed, "Melissa Jean Allison" and she provided the same name at the beginning over her testimony, we will, as a convenience and in effort to distinguish her from appellant, refer to her by this name rather than "Peterek." However, quotes from the record that refer to her as "Mrs. Peterek" are retained.

emphasized that she called 9-1-1 because, "I felt threatened. I felt threatened." Later, in response to questioning from defense counsel, she stated that she placed the call because she felt threatened with imminent bodily injury. On re-direct examination, the following exchange occurred:

Q:      . . . Mrs. Peterek, when you ran from Trent [appellant] and ran for the phone, were you afraid that if you didn't get the police there that you might be assaulted by him.

A:      I was.

Q:      Okay. And that was the reason you called 911?

A:      Yes, sir.

According to Allison's testimony, appellant grabbed the telephone out of her hands after she dialed 9-1-1, but before she was able to speak with the dispatcher who answered the call. The dispatcher was Tammy Oliver. Oliver testified about the call, stating, "I could hear a female screaming, a young female child screaming, and I heard a male voice in the background, stating that if you call the cops on me, Melissa, it will be your worst mistake. And there was lots of screaming again." She stated that she heard the male voice say that "Melissa was pathetic and you can't have me arrested. And then it was lots more screams." Before the call ended, Oliver heard "a lot of noise in the background, screaming, buttons being pushed, and then it was disconnected."

Oliver further testified that in response to the telephone call, she dispatched police officers to the address that her computer provided as the listed address for that telephone number. She stated that she received a second call from the same number and address, and a man, who identified himself as "Trent Peterek," and whose voice Oliver recognized

4

as the male voice from the previous call, assured Oliver that "everything is okay." At the hearing, the State played audio recordings from both telephone calls.

Allison testified that after appellant grabbed the telephone out of her hands, she ran out of her mobile home and to her step-father's travel trailer, which was located about one-hundred yards away. She asked her step-father to call 9-1-1, which he did despite requests from appellant, who had followed Allison to the trailer, not to call law enforcement. Shortly thereafter, police officers arrived.

Randy Zaruba, a community-supervision officer who supervised appellant, testified that it would be a violation of appellant's community supervision to violate a Texas or United States law. At the conclusion of the hearing, the trial court found the State's first and third allegations to be true and sentenced appellant to two years' confinement in the Texas Department of Criminal Justice, State Jail Division. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's order revoking community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (en banc) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). The State bears the burden of showing by a preponderance of the evidence that the defendant committed a violation of his community-supervision conditions. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Jones v. State*, 112 S.W.3d 266, 268 (Tex. App.—Corpus Christi 2003, no pet.). If the State does not meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

5

Proof by a preponderance of the evidence of any one of the alleged violations of the community-supervision conditions is sufficient to support a revocation order. *Moore*, 605 S.W.2d at 926; *Herrera*, 951 S.W.2d at 199. The trial court is the trier of facts in a revocation proceeding and is the sole judge of the credibility of the witnesses and the weight to be given to the testimony. *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We examine the record of the revocation proceeding in the light most favorable to the trial court's ruling. *Id.*

## III. APPLICABLE LAW

Under the Texas Penal Code, it is an offense to knowingly prevent or interfere with a person's ability to place an emergency telephone call. *See* TEX. PENAL CODE ANN. § 42.062(a) (West 2011). The Texas Penal Code defines "knowingly" in the following manner:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(b). An "emergency" is:

> A condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault or in which property is or is reasonably believed by the individual making the telephone call to be in imminent danger of damage or destruction.

*Id.* § 42.062(d). A reasonable belief is one "that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(42). Assault is the intentional, knowing, or reckless cause or threat of bodily injury to another, or the

6

intentional or knowing physical contact with another that is known or reasonably believed to be offensive or provocative to that person.   *Id.* § 22.01(a).

## IV.   DISCUSSION

Appellant contends that the trial court abused its discretion in finding that he knowingly interfered or interrupted an emergency call because the evidence was insufficient to support both the existence of an emergency and the knowing interference or interruption.   We disagree.

In support of his contention that no evidence supports the finding that an emergency existed, appellant relies on *Matlock v. State*, No. 12-05-00413-CR, 2006 Tex. App. LEXIS 6753 (Tex. App.—Tyler Jul. 31, 2006, no pet.) (mem. op., not designated for publication).   In *Matlock*, our sister appellate court ruled that the evidence was insufficient to support the finding that an emergency existed.   *See id.* at *8.   The *Matlock* Court premised its conclusion on the fact that the record included no direct testimony of fear of imminent assault.   *See id.* at *5–8.   In that case, the defendant's wife called 9-1-1 because she heard her child say, "Daddy," which indicated that her husband, who lived apart from her at that time, was in the house.   *Id.* at *2.   With her cordless telephone in hand, she walked into the hall, and the defendant grabbed the telephone away from her and hung up.   *Id.*   The appellate court noted that "the record before us is devoid of any evidence that Lisa [the defendant's wife] was afraid of [the defendant]."   *Id.* at *6.   The *Matlock* Court emphasized, "The record includes no direct evidence that Lisa was afraid of the defendant nor does the record contain any facts or circumstances from which we might infer that when Lisa made the call she reasonably feared she was in danger of

7

imminent assault." *Id.* at *7.

Here, unlike in *Matlock*, there is evidence that appellant's wife was afraid. Therefore, the trial court did not abuse its discretion in finding that an emergency existed and that appellant knowingly interfered with or interrupted the call. The trial court heard Allison testify that appellant cornered her during a heated argument and pursued her when she ran away. It heard her describe how she felt at the time she called 9-1-1; she expressed three times that she had felt threatened, and her testimony indicates that she called 9-1-1 because she felt it was an emergency and feared bodily injury and assault. In addition, Oliver testified that she received a 9-1-1 call and recognized appellant's later-identified voice say, "[I]f you call the cops on me, Melissa, it will be your worst mistake," and "you can't have me arrested." Oliver stated that she heard screaming and buttons being pressed before the call was abruptly disconnected. In addition, the trial court heard audio recordings of the 9-1-1 calls.

We hold that the trial court did not abuse its discretion in finding that the evidence supported, by a preponderance of the evidence, that an emergency existed and that appellant knowingly interfered or interrupted with an emergency call. *See Jones*, 112 S.W.3d at 268 (ruling trial court is sole judge of witness credibility and weight given testimony); *Canseco*, 199 S.W.3d at 439 (same); *see also Jackson v. State*, 287 S.W.3d 346, 350–52 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding evidence sufficient to support beyond reasonable doubt finding that the defendant interfered with emergency telephone call based in part on complainant's testimony, "I thought [the defendant] was

8

going to hurt me," and that the defendant said, "[B]itch, you going to call the cops, I'm going to give you something to call the cops for.").

Because the trial court had sufficient evidence to find by a preponderance of the evidence that an emergency existed and that appellant knowingly interfered or interrupted an emergency telephone call, we overrule appellant's first issue on appeal. Given that only one finding is necessary to support a revocation of community supervision, it is unnecessary for us to address appellant's other two issues. *See* TEX. R. APP. P. 47.1, 47.4; *Moore*, 605 S.W.2d at 926; *Herrera*, 951 S.W.2d at 199.

## V. CONCLUSION

We affirm the trial court's judgment revoking appellant's community supervision.

GREGORY T. PERKES
Justice

Do not publish.   TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of August, 2012.

9