ACCEPTED
03-15-00038-CR
6589626
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/20/2015 4:32:04 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00038-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/20/2015 4:32:04 PM
JEFFREY D. KYLE
Clerk

_____

On Appeal from the County Court at Law
Burnet County, Texas
Cause Number M29921

_____

**ROY LESLIE CRAYTON, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**STATE'S BRIEF**

_____

*Counsel for Appellee*
*The State of Texas*

**KRISTEN JERNIGAN**
Attorney Pro Tem
Burnet County, Texas
207 S. Austin Ave.
Georgetown, Texas 78626
(512) 904-0123
(512) 931-3650 (fax)
Kristen@txcrimapp.com

**ORAL ARGUMENT NOT REQUESTED**

# IDENTIFICATION OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Appellant:**

Roy Leslie Crayton

**Counsel for Appellant**:

Revis G. Kanak (at trial)
Office of the Public Defender
1008 Water Street
Burnet, Texas 78611

Gary E. Prust (on appeal)
1607 Nueces Street
Austin, Texas 78701

**Counsel for Appellee, The State of Texas:**

Cody Henson (at trial)
Attorney Pro Tem
205 S. Pierce Street
Burnet, Texas 78611

Kristen Jernigan (on appeal)
Attorney Pro Tem
207 S. Austin Ave.
Georgetown, Texas 78626

**Trial Court Judge:**

The Honorable Randy Savage

# **TABLE OF CONTENTS**

IDENTIFICATION OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT & AUTHORITIES   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      I.     *Appellant's sole point of error should be overruled because the evidence is legally sufficient to support the jury's verdict of guilt.*

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

# INDEX OF AUTHORITIES

## CASES

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . .6, 7, 11

*Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . .7, 11

*In re J.A.G.*, No. 03-05-00004-CV (Tex. App.—Austin, delivered April 28, 2006)
        (not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11

*Jackson v. State*, 287 S.W.3d 346 (Tex. App.—Houston [14th Dist.] 2009) . . . 9, 10

*Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . .7, 11

## STATUTES AND RULES

TEX. PENAL CODE § 42.062(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. R. APP. P. 38.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TEX. R. APP. P. 39.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 39.1, and Appellant's statement that he does not request oral argument, the State does not request oral argument.

No. 03-15-00038-CR

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

_____

On Appeal from the County Court at Law
Burnet County, Texas
Cause Number M29921

_____

**ROY LESLIE CRAYTON, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**STATE'S BRIEF**

_____


## STATEMENT OF THE CASE

Appellant was charged by information with the offense of interference with an emergency call. (CR: 4-5); (RR3: 4). On October 13, 2014, a jury convicted Appellant of that offense. (RR2: 285). The State and Appellant entered an agreement as to Appellant's punishment. (RR3: 4-5). Pursuant to that agreement, Appellant was sentenced to twelve months' confinement in the Burnet County Jail, probated for fifteen months and a $4,000.00 fine, which was also probated. (RR3: 4-5). Appellant filed a Motion for New Trail on October 28,

1

2014. (CR: 39). The motion was overruled by operation of law seventy-five days later on December 27, 2014. Appellant then timely filed Notice of Appeal on January 13, 2014. (CR: 40). This appeal results.

## STATEMENT OF FACTS

At trial, Officer Robert Paul Chrane of the Granite Shoals Police Department testified that on May 23, 2013, he was on patrol and was dispatched to a home located at 331 Sweetbriar in Burnet County regarding a landlord/tenant dispute. (RR2: 101). Officer Chrane answered some questions about the eviction process and then left. (RR2: 103-04). Approximately one hour later, Officer Chrane was again dispatched to the home located at 331 Sweetbriar and when he arrived this second time, Appellant walked out of the home and reported he had been threatened by William Martin, an occupant of the home. (RR2: 105-06). Appellant stated that he and Martin had a verbal altercation and that Martin had exhibited a knife, but Appellant's version of events changed as he repeated his story. (RR2: 106-07). Appellant said that he and Martin were fighting over a violation of contract rules signed in order to live at the home. (RR2: 110-11). After speaking with Appellant, Officer Chrane spoke to Martin who was upset. (RR2: 108).

2

On cross-examination, Officer Chrane explained that the home located at 331 Sweetbriar was known as the Living Word Ministry Men's Restoration Home and its occupants signed an agreement to live there. (RR2: 115). The home housed people who did not have funds to provide their own shelter. (RR2: 116).

William Martin testified that in May of 2013, he was living at the Men's Restoration House for the Living Word Ministry. (RR2: 154). Martin informed the jury that the Restoration House was a place where people could live to overcome drug addiction and to "get yourself straightened out." (RR2: 155). On the morning of May 23, 2013, Martin had a verbal altercation with Appellant over the phone about food stamps and Martin smoking in the home. (RR2: 165). Appellant and Martin had an agreement whereby Appellant would use Martin's food stamp card to purchase things for Appellant, the Restoration Home and the Living Ministry Church where Appellant was the pastor. (RR2: 167-69). However, the agreement made Martin "madder than a hornet," presumably because he felt he was being taken advantage of. (RR2: 169). Appellant and Martin argued often and Appellant threatened to evict Appellant. (RR2: 170). On May 23, 2013, Martin called the police to inquire as to whether Appellant had the authority to evict him. (RR2: 171). Officer Chrane responded and gave Martin some information about his tenant rights. (RR2: 171-72). Officer Chrane then

3

left. (RR2: 172). Some time later in the day, Appellant arrived at the home to find Martin smoking which made Appellant upset. (RR2: 174). Appellant used his "belly" to push Martin around the home in an attempt to get Martin to hit Appellant so he could evict him from the home. (RR2: 174-75). Appellant's conduct escalated and Martin felt he was being assaulted so he ran out to the living room to call the police. (RR2: 177). Appellant knew Martin was trying to call the police because Martin told him as much when he ran to the living room. (RR2: 178). When Martin attempted to call 911, Appellant pulled the phone out of Martin's hand, ripped the phone from the wall, and said, "You're not using my phone to call the cops." (RR2: 179). Appellant then took the phone and put it in his van. (RR2: 179). Martin stated that he never threatened Appellant with a knife and that had Appellant not pulled the phone from the wall, he (Martin) would have called the police. (RR2: 182).

On cross-examination, Martin stated that he was not "that concerned" during the altercation because he is not concerned about anybody. (RR2: 184). Martin clarified by stating, "I'm not concerned about the gentleman sitting here with a gun [the bailiff]. He shoots me, I die, it's over." (RR2: 184). After Martin's testimony concluded, the State rested its case in chief. (RR2: 199).

4

Appellant took the stand and denied Martin's allegations. (RR2: 207-08, 210, 217, 220). On cross-examination, Appellant stated that he ran the Restoration Home for approximately a year and a half, but had to shut it down because the police would not allow him to have water at the home. (RR2: 227-28). Appellant continued that he was told by the Water Department that the Police were preventing him from getting water because the home "was under investigation." (RR2: 228). With respect to the offense in this case, Appellant maintained that despite Officer Chrane's sworn testimony, the police never took a statement from him and would not talk to him. (RR2: 231-32). Appellant then stated several times that he did not take food stamp benefits or any other earnings from the residents of the Restoration Home. (RR2: 231-36). However, Appellant was shown a document tiled "System of Management" for the Living Word Ministry, that he helped create, which required the residents of the Restoration Home to "give any finances and assistance to the house leader for fair distribution. Food Stamps, food donations, et. cetera." (RR2: 237, 242). Also, despite his testimony that the residents were not required to give ten percent of their income to the home, Martin acknowledged that the "System of Management" agreement required residents to sign an statement that read, "I must give ten percent to church for tithes per paycheck." (RR2: 248). Although he testified

5

on direct examination that he never asked Martin to leave the home, Appellant was forced to admit that he filed an eviction action against Martin on May 23, 2013, the same day of the offense in this case. (RR2: 246-47). Appellant was also forced to admit that when he called the police on May 23, 2013, he called from his cell phone and not the house phone in the living room. (RR2: 250). At the close of Appellant's testimony, the defense rested its case in chief. (RR2: 258).

## SUMMARY OF THE ARGUMENT

Appellant's sole point of error should be overruled because the evidence is legally sufficient to support the jury's verdict of guilt.

## ARGUMENT AND AUTHORITIES

In his sole point of error, Appellant claims the evidence is insufficient to support his conviction because the evidence showed the complainant was not in fear of an imminent assault and because no reasonable person would have been afraid of an imminent assault. *See* Appellant's Brief at 10. The Court of Criminal Appeals has held that the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), is the only standard that a reviewing court should apply when determining the sufficiency of the evidence. *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). When reviewing the legal sufficiency of the evidence, an appellate court views the evidence in the light most

6

favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896. "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899.

"Under federal and Texas law, juries trump both trial and appellate judges on weight-of-evidence determinations." *Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006), *citing Jackson,* 443 U.S. at 326 ("When the court is faced with a record of historical facts that supports conflicting inferences, it must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution"). Moreover, unless the available record clearly reveals a different result is appropriate, an Appellate Court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and the jurors were in attendance when the testimony was delivered. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

In order to convict Appellant of the offense of interference with an emergency call, the State was required to prove beyond a reasonable doubt that Appellant knowingly prevented or interfered with Martin's ability to place an emergency call or to request assistance, including a request for assistance using an electronic communications device, in an emergency from a law enforcement agency, medical facility, or other agency or entity the primary purpose of which is to provide for the safety of individuals. TEX. PENAL CODE § 42.062(a). "Emergency" means "a condition or circumstance in which any individual is or is reasonably believed by the individual making a call or requesting assistance to be in fear of imminent assault or in which property is or is reasonably believed by the individual making the call or requesting assistance to be in imminent danger of damage or destruction." TEX. PENAL CODE § 42.062(c).

In this case, the jury heard evidence that on May 23, 2013, Appellant confronted Martin about violating the rules of the Restoration Home and that during the confrontation, Appellant assaulted Martin by bumping him with his belly and by forcing Martin through the home, finally cornering him in a bedroom. When Appellant ran to the living room to call the police, Appellant knew what Martin was attempting to do because Martin told him as much when he ran to the living room. In fact, when Martin attempted to call 911, Appellant pulled the

8

phone out of Martin's hand, ripped the phone from the wall, and said, "You're not using my phone to call the cops." Appellant then took the phone and put it in his van. Thus, the evidence in this case shows that Appellant undoubtedly interfered with an emergency call and that an actual assault had been committed, and not just the fear of an imminent assault.

Appellant cites *Jackson v. State*, 287 S.W.3d 346 (Tex. App.—Houston [14th Dist.] 2009), and states:

> In *Jackson v. State*, the complaining witness told the police that Jackson slapped the phone away from her hand while she was dialing 9-1-1 and was crying when the officers arrived. 287 S.W.3d 346, 349 (Tex.App – Houston [14th Dist.] 2009, no pet.). Law enforcement responded to the 9-1-1 hang up call. *Id*. She dialed 9-1-1 again, before law enforcement's arrival. *Id*. She also testified Jackson told her that if she called the police, he would "giver [her] something to call the cops for", that he jumped on top of her and knocked the phone from her hand after yelling at her when she first called 9-1-1." *Id*. She stated she thought Jackson was going to hurt her. *Id*.

Presumably, Appellant cites *Jackson* to distinguish the facts of that case from the facts of the present case. However, in *Jackson*, the Court of Appeals explicitly upheld the charge of interference of an emergency call, in the face of a challenge to the sufficiency of the evidence that no evidence of imminent assault existed, based on the vicitm's first attempt at calling 911 where the defendant assaulted the victim prior to the attempted call, the defendant slapped the phone out of the victim's hand before she could complete the call, and the victim left her

9

home to get away from the defendant. *Jackson*, 287 S.W.3d at 350-52. The same facts occurred in the instant case. Specifically, Appellant assaulted Martin and when Martin tried to call 911, Appellant grabbed the phone from his hand, pulled the phone from the wall, and Martin left the home to get away from Appellant.

Appellant next argues that because Martin stated he was not "that concerned" during the offense in this case, the evidence is insufficient to show Martin was in fear of an imminent assault. To be fair, what Martin stated was that he was not concerned because he was not concerned about anybody. He stated further, "I'm not concerned about the gentleman sitting here with a gun [the bailiff]. He shoots me, I die, it's over." Martin's reference clearly included the possibility of death, and indicated his apparent indifference regarding that possibility. That does not negate the fact that Appellant in fact assaulted Martin and that a reasonable person would have feared an imminent assault.

For example, in *In re J.A.G.*, also cited by Appellant, the defendant's grandmother, and victim of the offense, testified that she was not in fear of her grandson when he interfered with her ability to make an emergency call. *In re J.A.G.*, No. 03-05-00004-CV (Tex. App.—Austin, delivered April 28, 2006) (not designated for publication). However, the Court of Appeals held that based on

the facts of the case, a rational trier of fact could have found the victim was in fear of imminent assault, or that a reasonable person would have been in fear of imminent assault, despite her testimony. *Id.*

As discussed above, where there is conflicting testimony, this Court must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflicts in favor of the State where the jury has rendered a guilty verdict. *Evans*, 202 S.W.3d at 164. This is so because the jury's determination concerning what weight to give contradictory testimonial evidence, including an evaluation of credibility and demeanor, is based on the jurors' ability to consider the testimony when it was delivered. *Johnson*, 23 S.W.3d at 8.

In this case, the jury heard Appellant give conflicting testimony and witnessed him getting caught in several untruths. The jury also considered Martin's testimony and, by its verdict, believed his version of events. Therefore, the evidence is legally sufficient to support Appellant's conviction. *See Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896. Accordingly, Appellant's sole point of error should be overruled.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** the State respectfully requests that this Court affirm the judgment and sentence of the trial court.

Respectfully submitted,


\_\_\_\_/s/ Kristen Jernigan_____
KRISTEN JERNIGAN
Attorney Pro Tem
State Bar Number 90001898
207 S. Austin Ave.
Georgetown, Texas 78626
(512) 904-0123
(512) 931-3650 (fax)
Kristen@txcrimapp.com


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Appellee's brief has been emailed to the attorney of record for Appellant, Gary E. Prust, 1607 Nueces, Austin, Texas 78701, on August 20, 2015.


_____/s/ Kristen Jernigan_____
Kristen Jernigan

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document consists of 3,606 words in compliance with Texas Rule of Appellate Procedure 9.4.

_____/s/ Kristen Jernigan_____
Kristen Jernigan