ACCEPTED
03-15-00038-CR
6166871
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/21/2015 9:30:40 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00038-CR

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/21/2015 9:30:40 PM
JEFFREY D. KYLE
Clerk

# IN THE COURT OF APPEALS FOR THE THIRD SUPREME JUDICIAL DISTRICT AT AUSTIN, TEXAS

## ROY LESLIE CRAYTON,
**Appellant**

## vs.

## THE STATE OF TEXAS,
**Appellee**

**Appeal from the County Court at Law
Cause No. M29921
Burnet County, Texas
The Honorable W. Randy Savage, Judge Presiding**

## APPELLANT'S BRIEF

**Gary E. Prust
State Bar No. 24056166
1607 Nueces Street
Austin, Texas 78701
(512) 469-0092
Fax: (512) 469-9102
gary@prustlaw.com**

**ATTORNEY FOR APPELLANT**

# IDENTITY OF THE PARTIES

**APPELLANT:**
Roy Leslie Crayton
604 S. Rhomberg St.
Burnet, Texas 78611

**TRIAL COUNSEL FOR APPELLANT:**
Revis Kanak
Burnet County Public Defender's Office
1008 N. Water St.
Burnet, Texas 78611
SBN 11091500

**APPELLATE COUNSEL FOR APPELLANT:**
Gary E. Prust
Law Office of Gary E. Prust
1607 Nueces St.
Austin, TX 78701
SBN 24056166

**TRIAL AND APPELLATE COUNSEL FOR APPELLEE:**
Cody Henson
Law Office of Cody Henson, PLLC
County Attorney Pro Tem
205 S. Pierce St.
Burnet, TX 78611
SBN 24058682

# TABLE OF CONTENTS

Identity of the Parties ..................................................................................... ii

Table of Contents ........................................................................................... iii

Table of Authorities ....................................................................................... iv

Statement of the Case..................................................................................... 1

Statement Regarding Oral Argument............................................................. 2

Issue Presented .............................................................................................. 3

      Whether the evidence is insufficient to support the offense of interfering with an emergency call when (1) the complaining witness testifies he was not in fear of any man or (2) the circumstances or conditions were not such that any individual would have been in fear of an imminent assault, even viewing the evidence in the light most favorable to the verdict.

Statement of the Facts .................................................................................. 4

Summary of the Argument.............................................................................. 10

Argument ........................................................................................................ 11

Prayer ............................................................................................................. 18

Certificate of Service ..................................................................................... 19

Certificate of Compliance............................................................................... 19

Appendix.......................................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ............................... 11, 13

*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) ...................................... 13

*Garcia v. State*, 367 S.W.3d 683 (Tex. Crim. App. 1996) .......................... 12, 16, 17

*In re J.A.G.*, No 03-05000004-CV (Tex. App. – Austin 2006, no pet) .................. 15

*Jackson v. State*, 287 S.W.3d 718
(Tex.App. – Houston [14th Dist.] 2009, no pet.) .......................................... 14

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1971) ........................... 12, 13, 17

*Peterek v. State*, No. 13-10-00494-CR
(Tex.App. – Corpus Christi 2012, pet. ref'd) ................................................ 15

*Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007) ........................ 13


**STATUTES**

Tex. Pen. Code § 42.062(a) (West 2013) ................................................................ 11

Tex. Pen. Code § 42.062(d) (West 2013) ............................................................... 12

Acts of May 15, 2013, 83rd Leg., R.S. Ch 331, § 7, sec. 42.062,
2013 Tex. Gen. Laws 1105, 1106-07 ........................................................... 11


**CONSTITUTIONAL PROVISIONS**

UNITED STATES CONST. Amend. XIV .................................................................... 13

**STATEMENT OF THE CASE**

*Nature of the case:*          This is an appeal from a criminal conviction for interference with an emergency call, in violation of § 42.062(a) of the Texas Penal Code (West 2013).

*Course of the proceedings:* Appellant was accused of the offense on or about May 30, 2013. CR 4-5. The complaint and information were filed January 8, 2014. CR 4-5. The prosecutor pro tem was duly appointed July 14, 2014. CR 11-12. A jury trial was held October 13, 2014. *See* II RR 1 *et, seq*. After returning a verdict of guilty, the parties reached an agreement on punishment for probation, various fees to reimburse the county, and permission to appeal the verdict. III RR 3-4.

*Trial court's disposition:* The trial court assessed punishment at twelve months confinement in the county jail, probated fifteen months, a fully probated $4000 fine, court costs, appointed attorney fees, and other conditions of community supervision. III RR 4. Appellant preserved the right to appeal. CR 35.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument. Appellant submits the issues in this case are not complex, novel, or unique. Accordingly, Appellant believes the Court does not need oral argument of the parties to help guide the Court's decision.

## ISSUE PRESENTED

Whether the evidence is insufficient to support the offense of interfering with an emergency call when (1) the complaining witness testifies he was not in fear of any man or (2) the circumstances or conditions were not such that any individual would have been in fear of an imminent assault, even viewing the evidence in the light most favorable to the verdict.

## STATEMENT OF FACTS

Appellant, Roy Leslie Crayton, was charged by information on January 8, 2014 with the misdemeanor offense of interfering with an emergency call by preventing Mr. William Martin placing a telephone call to the police, on or about May 30, 2013. CR 4-5. Appellant was arrested on May 30, 2013 and applied for court appointed counsel the next day. CR 6-7. This application reflects Appellant received social security disability, does not have funds to hire an attorney, and meets the eligibility requirements for appointed counsel. *Id*.

On July 17, 2014, the county attorney for Burnet County voluntarily recused himself and his office after a conflict arose in the case. CR 9-10. That same day, the trial court judge signed the order of recusal and appointed a county attorney pro tem. CR 12. The case went to jury trial on October 13, 2014. *See* II RR 1 *et seq*.

Officer Robert Chrane of the Granite Shoals Police Department responded to a disturbance at a residence in Granite Shoals, Burnet County, Texas on May 23, 2013. II RR 100-01. Mr. William Martin called to file a complaint about a landlord/tenant dispute he had with Appellant. II RR 101. Appellant was not at the residence when Mr. Martin called. II RR 103.

Later that same day, Officer Chrane again responded to the same residence and met Appellant outside. II RR 105. Officer Chrane was informed by Appellant he and Mr. Martin were involved in a verbal altercation and Mr. Martin threatened

4

him with a knife. II RR 105-06. Chrane described Appellant as being upset because of the situation, but he was not aggressive and simply wanted to talk with law enforcement. II RR 106. As Officer Chrane was investigating Appellant's allegation about the knife, he received word over the radio another officer found Mr. Martin a few blocks down the road. II RR 107. Appellant informed Chrane that Mr. Martin violated the terms of the lease and needed vacate the residence. II RR 111. Chrane explained the eviction process and that a landlord may not oust a resident without legal process. II RR 111.

Chrane then went to speak with Mr. Martin. II RR 108. After speaking with him, Chrane concluded there was no injury involved in the case, and Appellant never used or exhibited a weapon. II RR 120.

Mr. William Martin began receiving disability in June 2014, with a finding the disability went back to March 2012. II RR 153-54. The disability is based on a "reading disorder, mathematics and depression" in addition to bipolar and antisocial personality disorder. II RR 154. He moved into the Living Word Ministry Men's Restoration House (herein, referred to as "house") in 2013. II RR 154-55. He was not working while the house because he fell off a ladder, and he was trying get on disability. II RR 163.

The facts are highly contested as to what happened the morning of the incident up before Officer Chrane's second arrival. Mr. Martin contended he and

Mr. Crayton argued over the telephone that morning which lead him to call the police. II RR 164-65; 170. Mr. Martin refused to sign over food stamp benefits to the house and did not sign the lease contract because he has a reading disability. II RR 166-67. Because of this disagreement, Appellant was threatening to oust Mr. Martin from the house. II RR 170. Appellant's helper at the house, Timothy, called Appellant and notified him Mr. Martin called the police and that Mr. Martin was smoking in the house, in violation of the house rules. II RR 173.

Appellant soon arrived and appeared upset, was shouting when he entered, and pushed Mr. Martin using his belly. II RR 174. Appellant then challenged Mr. Martin to strike him. II RR 175. Appellant continued to push against the complainant with his belly which he characterized as Appellant "definitely assaulting me." II RR 177. Had Mr. Martin not left the room where the two argued, Appellant "probably would have done something to make him leave me alone." II RR 177. Mr. Martin went into the next room, picked up the landline telephone, and told Appellant he was calling the police as he walked by him. II RR 178.

Mr. Martin wanted the police to make Appellant leave and stop shouting at him. II RR 178. As he was about place call, Appellant took the phone from Mr. Martin's hand and pulled it from the wall. II RR 179. However, Appellant did not skin contact with him when he took the phone. II RR 197. Mr. Martin then left, and Appellant did not follow him. II RR 179. He started toward the police station but

6

was approached by officers before he could reach a phone. II RR 181. He learned that Appellant called the police after he left. II RR 181. Mr. Martin claims not to have pulled a knife on Appellant and felt that Appellant was trying to intimidate him. But Mr. Martin "don't [sic] take intimidation at all. Push me, I push harder." II RR 182.

Appellant began to discredit Mr. Martin's testimony by demonstrating that while he claims a reading disability, he claims to have taught Sunday school, filled out a lease with Appellant on which he checked various spaces and wrote in various places on the lease. II RR 184-87. Appellant also elicited the following testimony:

Q (By Attorney for Appellant) .. [Y]our testimony here was you really weren't worried - - you weren't concerned, isn't that right. Your exacted words were, Not really.

A. (By Mr. William Martin)   I'm really not that concerned about anybody.

Q.   Okay. You weren't concerned - - you're not concerned about anybody. Okay.

A.   I'm not concerned about the gentleman sitting here with a gun. He shoots me, I die, it's over."

II RR 184. Mr. Martin provided the police a statement he personally wrote by

hand. II RR 188. When asked to explain it, Mr. Martin said he could not understand writing without someone else reading it to him and that he can write what is on his mind. II RR 191-92. Nevertheless, he cannot read nor comprehend what he minutes before wrote down. II RR 192.

Appellant testified to greatly different facts than those of Mr. Martin. Mr. Martin lived in the house for about ten months with one notable absence for about two or three days. II RR 201. Residents were required to sign a contract, were not obligated to pay rent, but were obligated to contribute to the food of the house along with other essentials. II RR 202. Appellant never had any intention to evict Mr. Martin and called his testimony all lies. II RR 203. Mr. Martin had been a resident of the house from near the very start of its existence. II RR 226. Appellant tried to get water service regularly but was unsuccessful. II RR 226. The doors were stolen from the house, and he blamed Mr. Martin as one of the culprits. II RR 226-27. After the incident, no officer attempted to speak with Appellant even though he called to law enforcement trying to provide a statement. II RR 204. After the incident occurred, Appellant was left with the impression he had to evict Mr. Martin, even though he never evicted any other resident. II RR 204-05. In the eviction suit, Appellant did not seek any back rent or money damages. II RR 205. Appellant invited another preacher Timothy, from Boston to help oversee the house. II RR 215.

Appellant contradicted Mr. Martin's testimony that they spoke for three hours earlier that day. II RR 249-50. After he arrived, Appellant saw Mr. Martin throwing a fit, as he would do. II RR 217. Despite this and all the other bad things the complainant did, he never asked Mr. Martin to leave. II RR 217. He also never received any food stamps or other remuneration from Mr. Martin. II RR 230; 240. The complainant stormed out of the house and passed each person, never asking anyone to use their phone, or asking anyone to call the police. II RR 249. Appellant never yanked the house phone from the wall. II RR 250. Nor did he ever push the complainant with his belly. II RR 251.

After the close of evidence, the jury returned a guilty verdict. II RR 284. Following that, Appellant and the state entered an agreement as to punishment on October 16, 2014. III RR 4. The terms of the agreement were for 12 months confinement, probated 15 months, a full probated $4000 rind, court costs of $317, $250 in attorney fees, 60 hours of community service, no contact with Mr. Martin, in addition to other standard conditions of probation. III RR 4.

## SUMMARY OF THE ARGUMENT

The evidence in this case was highly contested. Testimony of the complaining witness and Appellant were in direct contradiction. We must presume the jury tended to believe the complainant's version of the events. Even in light most favorable to that version, the finding of guilt cannot withstand a sufficiency challenge because the uncontroverted evidence showed the complainant was not in fear of any assault, much less any imminent assault. Likewise, under the facts introduced most favorable to the verdict, no individual would have reasonably been afraid of an assault. If however, an individual could be said reasonably to be afraid, there were no circumstances by which any feared assault was imminent.

**ARGUMENT**

**The evidence is sufficient to support a verdict of guilty for the offense of interfering with an emergency call because (1) the complaining witness was not in fear of an imminent assault and (2) the circumstances or condition were not such that any individual would have been in fear of an imminent assault, even when that evidence is viewed in the light most favorable to he verdict.**

### Standard of Review

When an appellant challenges the sufficiency of the evidence supporting his conviction, the reviewing court will examine all the evidence adduced at trial in the light most favorable to the verdict and must determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

### Law Applicable

In 2013, a person committed the offense of interference with an emergency telephone call when that individual "knowingly prevents or interferes with another individual's ability to place an emergency telephone call or to request assistance in an emergency from a law enforcement agency …". TEX. PEN. CODE § 42.062(a) (West 2013).[1]

---

[1] Minor changes were made to the law by the 83rd Legislature, primarily adding language to cover electronic communications in addition to phone calls. Acts of May 15, 2013, 83rd Leg., R.S., Ch. 331, § 7, sec. 42.062, 2013 Tex. Gen. Laws 1105, 1106-07.

As applied to this offense, "emergency" is defined as a "condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault …." TEX. PEN CODE § 42.062(d) (West 2013).

The Texas Penal Code does not define "imminent", but the Texas Court of Criminal Appeals defined it as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Garcia v. State*, 367 S.W.3d 683, 689 (Tex. Crim. App. 2012).

In sufficiency review, the appellate court will defer to the jury's credibility and weight determinations because the jury is the "sole judge" of the credibility of witnesses and weight given to testimony. *Id*. at 687. The reviewing court determines whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Id*. When there are conflicting inferences, the court must presume the jury resolved the conflicts in favor of the state and defer to those determinations. *Id*.

However, evidence will be found insufficient to sustain a conviction when the record contains "no evidence, or merely a 'modicum' of evidence, probative of an element of the offense." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[A] 'modicum' of evidence [cannot] by itself rationally support a conviction beyond a reasonable doubt.")

12

A criminal defendant turned appellant is permitted to raise an issue on appeal that a verdict is against the great weight of the evidence, as a constitutional due process complaint. *See Jackson*, 443 U.S. at 319; U.S. CONST. Amend. XIV. Until recently, under Texas law, this type of appellate complaint could raise both legal sufficiency and factual sufficiency complaints. *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996. Texas Appellate courts, however, recognized the *Clewis* factual sufficiency was barely distinguishable from the *Jackson* legal sufficiency. *See, e.g., Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). In 2010, the Texas Court of Criminal Appeals, declared "there is … no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard, and these two standards have become indistinguishable." *Brooks v. State*, 323 S.W.3d at 902. The Court stated, "We ... decide that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id*. at 895. That standard is characterized as, "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319.

**Argument**

The State introduced controverted evidence Appellant used his belly to touch the person of Mr. Martin, without the consent of Mr. Martin. II RR 174; II RR 220. The State's evidence also showed Mr. Martin is not concerned about anybody; II RR 184; is not scared of any man, even though cornered; II RR 193; and does not respond to intimidation. II RR 182. Mr. Martin responds to intimidation by pushing back even harder. II RR 182. When Mr. Martin left the residence, Appellant did nothing to stop him or to harm him. II RR 180. The evidence of Mr. Martin's absence of fear was at no point contradicted. Likewise, there is no evidence in the record Mr. Martin was either afraid, or in fear of an assault.

In *Jackson v. State*, the complaining witness told the police that Jackson slapped the phone away from her hand while she was dialing 9-1-1 and was crying when the officers arrived. 287 S.W.3d 346, 349 (Tex.App – Houston [14th Dist.] 2009, no pet.). Law enforcement responded to the 9-1-1 hang up call. *Id*. She dialed 9-1-1 again, before law enforcement's arrival. *Id*. She also testified Jackson told her that if she called the police, he would "giver [her] something to call the cops for", that he jumped on top of her and knocked the phone from her hand after yelling at her when she first called 9-1-1." *Id*. She stated she thought Jackson was going to hurt her. *Id*.

14

*In re J.A.G.* held evidence was sufficient when the officer testified the complaining witness was distraught, upset, and was intimidated by appellant. No. 03-05-00004-CV at pgs. 8-9, (Tex.App. – Austin 2006, no pet.). In *Peterek v. State*, evidence was sufficient when the complainant stated she dialed 9-1-1 because she felt threatened, there was an emergency, and the 9-1-1 dispatcher testified she heard screaming on the phone and heard a male voice state calling the cops on him would be the complaining's worst mistake. No. 13-10-00494-CR (Tex.App. – Corpus Christi 2012, pet. ref'd).

As applied to the case at bar, even with the facts viewed in the light most favorable to the verdict, there is still a void of evidence Appellant was in fear of an assault. While in the room during the confrontation, Mr. Martin was cornered by Appellant. Mr. Crayton was then taken aside by another witness. At that point, the complainant, without running, quickly walked past the two but was not stopped by Mr. Crayton. The finder of fact must have then found Appellant prevented Mr. Martin from making a telephone call, and disregarded Appellant's controverting testimony. Even if that physical act of removing the telephone happened, there is no evidence an assault was imminent.

The complaining witness wanted the police make Appellant leave. He was not seeking protection from physical harm and did not think Appellant was menacingly near to striking him. He unequivocally stated Mr. Crayton did not

15

make contact with him when taking the phone from his hand.

Indeed, Mr. Martin, when pushed, says he will push back and is never intimidated. If Appellant placed Mr. Martin in fear of an imminent assault, Mr. Martin would have pushed back, struck Mr. Crayton or attempted to return intimidation. A review of the record shows the opposite of the state's contention is true: Mr. Martin not in fear. But for Mr. Martin's leaving the room, he "probably would have done something to make [Mr. Crayton] leave [him] alone." II RR 177.

After what must have been a brief, heated encounter, the complainant left the house unharmed.

The State argued that any person, not just Mr. Martin, could have been in fear of an imminent assault. A review of these facts viewed in the light most favorable to the verdict, shows no rational person would feel an assault was "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *See Garcia v. State*, 367 S.W.3d at 689. Again, quite the opposite: Mr. Crayton allowed the complainant to leave the house unharmed. To add to this, presuming the finder of fact believed the complainant, Mr. Crayton wanted him to leave. Under these facts, with a confrontation, the complainant's quick exit from one room, his attempt to call the police to make Mr. Crayton leave the house, and the complainant's unscathed exit, the logical force and rational inference drawn shows no person would be afraid of an imminent assault that

16

never occurred. It never occurred in spite of the multiple times it could.

In conclusion, the complainant stated he was not in fear of Mr. Crayton, or of any man. Mr. Crayton wanted Mr. Martin out, and when he left, the episode was complete. Appellant did not go to the house to assault Mr. Martin. In light the fact-finder's verdict, a fair conclusion is that two large, grown men got into a verbal argument that never became physical despite the numerous chances it could have, and no rational person would have found Mr. Crayton was threateningly near to assaulting the complaining witness. At best, though Appellant makes no such concession, there may be a "modicum" of evidence of immanency. But a mere modicum of evidence cannot sustain a verdict beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Garcia*, 367 S.W.3d 689.

## PRAYER

Appellant respectfully prays that this Honorable Court grant the relief requested and find the evidence insufficient to support the verdict and by doing so, remand the proceedings to the trial court and order the court there enter an acquittal. Appellant prays for any other relief to which he may be entitled in equity or at law.

Respectfully submitted,

/s/ Gary E. Prust

Gary E. Prust
State Bar No. 24056166
1607 Nueces St.
Austin, Texas 78701
(512)469-0092
Fax (512)469-9102
gary@prustlaw.com
Attorney for Roy Leslie Crayton

## CERTIFICATE OF SERVICE

In compliance with TEX. R. APP. PROC. 9.5(b)(1), (d), and (e) the undersigned attorney certifies that a true and correct copy of the foregoing Brief was served at or before the time of its filing upon Mr. Cody Henson, attorney pro tem for the Burnet County Attorney, to his email address at cody@hillcountrylegal.com via the electronic filing manager through efile.txcourts.gov on the 21st day of July, 2015.

/s/ Gary Prust
Gary E. Prust


## CERTIFICATE OF COMPLIANCE

I hereby certify Appellant's Brief contains 3200 words and is in compliance with TEX. R. APP. PROC. 9.4(i)(2)(B). In certifying so, I rely on the word count of the computer program used in preparing this document.

/s/ Gary Prust
Gary E. Prust

# APPENDIX A

*In re J.A.G.*, No 03-05000004-CV
(Tex. App. – Austin 2006, no pet)

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00004-CV

**In the Matter of J. A. G.**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
## NO. J-24,925, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

J.A.G., a juvenile, was adjudicated delinquent following the district court's finding that he interfered with an emergency telephone call. *See* Tex. Pen. Code Ann. § 42.062(a) (West Supp. 2005). J.A.G.'s grandmother placed a call to 911 when J.A.G. refused to go to school. In two issues, J.A.G. challenges the legal and factual sufficiency of the evidence. We will affirm the judgment of the district court.

## BACKGROUND

On September 15, 2004, Deputy Keith Goodman of the Travis County Sheriff's Office responded to a 911 interference call from an address in Pflugerville. When Goodman arrived at the address, he encountered Lupe Serna, who was crying and appeared distraught, angry, and upset. Goodman testified that:

Ms. Serna told me that her grandson, [J.A.G.], was out of control and refusing to go to school, that he had gone upstairs and locked himself in. Ms. Serna told me that she had called 911 to get deputies to respond because she was a little bit intimidated by her grandson, who is 5'11" and, I believe, 175 pounds. Apparently she had called 911, and then she told [J.A.G.] she was talking to 911 personnel whenever [J.A.G.] took the phone away from her and disconnected it.

Goodman further testified that Serna told him that J.A.G. took her keys away from her so that she could not go anywhere. Serna also told him that she then "fled" from her residence, went to a neighbor's house, and completed a 911 call from there.

During J.A.G.'s adjudication hearing, the State called Serna as a hostile witness. On direct examination, Serna admitted that she called 911 after first calling 311[1] and not being able to get through, but she denied feeling intimidated or threatened by J.A.G.:

Q: And on September the 15th, do you remember stating that you were intimidated by [J.A.G.]?

A: No, huh-uh.

Q: And do you remember telling the sheriff officer that you fled the residence because you were intimidated by [J.A.G.]?

A. No.

Q: Did you call 911 on your grandson from the neighbor's residence?

A: That—yes, after the 311 no response.

Q: And did you make a report on your grandson about him being out of control and rebellious?

A: No.

---

[1] 311 is a number reserved for non-emergency calls related to city services.

2

Q: And did you say that your grandson was using vulgar language and cursing?

A: No.

Q: You don't remember saying that?

A: I don't remember.

Q: Why did you call 911?

A: Because 311 did not respond.

Q: Were you upset or afraid?

A: I was not afraid. I was just needing him to go to school.

On cross-examination, Serna provided further information about the incident:

Q: Just to be clear, were you afraid of [J.A.G.]?

A: No.

Q: Did [J.A.G.] threaten you physically? Did he threaten to hit you?

A: No.

Q: Did he threaten to break anything in the house?

A: No.

Q: Did he—did he throw anything around the house?

A: No.

Q: Was he behaving in a manner that you felt physically threatened?

A: No.

Q: Okay. Was there any property in your house that you expected him—or any property anywhere belonging to you that you expected to have been damaged by [J.A.G.]?

A: No.

Q: That morning, you and [J.A.G.] got into a little disagreement about him going to school?

A: Yes.

Q: He didn't want to go to school and you wanted him to go to school; is that correct?

A: Yes.

Q: And he was refusing to go to school; is that correct?

A: Yes.

Q: And you called 311 so that you could get someone to encourage him to go to school?

A: Yes.

Q: Is that correct? You didn't view that as an emergency, did you?

A: No, sir.

The State also called Robbin Kohn, a paralegal for the District Attorney's office, to testify to statements she heard Serna make to Texanna Davis, the Assistant District Attorney prosecuting the case. Kohn testified that Serna said she called 911 on her grandson, and that when she tried to make the call, he disconnected her phone.

The tape of the 911 call Serna placed was not admitted into evidence. The State played the tape to the court solely for the purpose of impeaching Serna with prior inconsistent

4

statements. After the tape was played for the court, Serna admitted telling the 911 operator that she was having a problem controlling J.A.G., that he was being very rebellious and using vulgar language towards her, that he was treating her with no respect, and that he had disconnected her phone.

After hearing all of the evidence, the court found Serna's testimony "credible in parts and incredible in parts." The court found the testimony of Kohn and Officer Goodman credible. Based on this evidence, the court then found that J.A.G. had engaged in delinquent conduct:

> And I think what occurred is exactly what—what you testified to, Ms. Serna—was that you tried to get your grandson to get up for school and he wouldn't do it. And that you called 911, that you were concerned—so concerned, that you fled. You were concerned that he had your keys. And you called from a neighbor's house. And that you were in a state of feeling intimidated or threatened by your grandson. . . . I think that it's clear that your grandmother loves you, and she wants you to do well. . . . But in terms of what occurred and what happened there, that's exactly what happened. You interfered with her calling 911.

The court then placed J.A.G. on probation for eight months. This appeal followed.

## DISCUSSION

In two issues on appeal, J.A.G. contends that the evidence is legally and factually insufficient to prove that the call he disconnected was an emergency call.

**Standard of review**

We review adjudications of delinquency in juvenile cases by applying the same standards applicable to sufficiency of the evidence challenges in criminal cases. *In re M.C.L.*, 110 S.W.3d 591, 594 (Tex. App.—Austin 2003, no pet.). When there is a challenge to the legal

5

sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). We review all the evidence in the light most favorable to the verdict, assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id.*

In a factual sufficiency review, we consider all the evidence equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). We consider all the evidence, rightly or wrongly admitted. *See Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.). Due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, and we may disagree with the result only to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). We will deem the evidence factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85; *see Johnson*, 23 S.W.3d at 11.

6

**Application**

In order for J.A.G. to be adjudicated delinquent, the State had to prove beyond a reasonable doubt that J.A.G. knowingly prevented or interfered with Serna's ability to place an emergency telephone call. *See* Tex. Pen. Code Ann. § 42.062(a). The statute defines "emergency" as "a condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault or in which property is or is reasonably believed by the individual making the telephone call to be in imminent danger of damage or destruction." *Id*. § 42.062(d).

It is undisputed that no property was in danger of damage or destruction during the incident. Therefore, for the call to be an emergency call as defined by the statute, the State needed to prove that Serna was in fear of imminent assault. A person commits an assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, intentionally or knowingly threatens another with imminent bodily injury, or intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *Id*. § 22.01(a). An assault is "imminent" if it is immediately going to happen. *See Stefanoff v. State*, 78 S.W.3d 496, 501 (Tex. App.—Austin 2002, pet. ref'd) (defining "imminent" in relation to the term "harm").

Officer Goodman testified that Serna appeared distraught and upset when he found her and that she told him that J.A.G. was "out of control," she was "a little bit intimidated" by him, and that she "fled" her home to call 911. Serna also admitted that she told the 911 operator that J.A.G. used "vulgar language" towards her. Viewed in the prism of the light most favorable to the

7

verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Serna was in fear of imminent assault from J.A.G. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). The evidence is thus legally sufficient to prove that the call J.A.G. disconnected was an emergency call. We overrule J.A.G.'s first issue.

In a factual sufficiency review, we consider all of the evidence in a neutral light. *See Zuniga*, 144 S.W.3d at 484. Officer Goodman's testimony that Serna was "a little bit intimidated" must be weighed against Serna's repeated and insistent testimony that she did not feel threatened or afraid. However, determining the credibility of witnesses is the exclusive province of the trier of fact. *See Jones*, 944 S.W.2d at 647. The district court found Goodman's testimony credible and Serna's testimony "credible in parts and incredible in parts." Having reviewed the record, we understand why the district court reached this conclusion. According to the State, Serna filed an affidavit of non-prosecution in the case, and Serna testified that she did not want to pursue charges against her grandson. She told the prosecutor on the day of the trial that she did not want to testify, and when the State called her to testify as a hostile witness, Serna's testimony was littered with contradictions and statements that she "did not remember" what she told the 911 operator, the police, and the prosecutor. Therefore, it was rational for the district court to discredit Serna's testimony that she did not feel threatened by J.A.G. and to credit Officer Goodman's testimony that Serna told him that she was so "intimidated" by J.A.G.'s verbally abusive and "out of control" behavior that she "fled" her house. Considering all of the evidence in a neutral light, a rational trier of fact could have found beyond a reasonable doubt that Serna was in fear of imminent assault. The evidence is thus

factually sufficient to prove that the call J.A.G. disconnected was an emergency call.  We overrule

J.A.G's second issue.

## CONCLUSION

Having overruled J.A.G.'s issues on appeal, we affirm the judgment of the district

court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   April 28, 2006

# APPENDIX B

*Peterek v. State*, No. 13-10-00494-CR
(Tex.App. – Corpus Christi 2012, pet. ref'd)



## NUMBER 13-10-00494-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

RAYMOND TRENT PETEREK,                                    Appellant,

v.

THE STATE OF TEXAS,                                      Appellee.

---

**On appeal from the 24th District Court
of Goliad County, Texas.**

---

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Perkes**

Appellant, Raymond Trent Peterek,[1] appeals from the trial court's judgment

revoking his community supervision.   *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23

---

[1]   This case comes to us on appeal from Goliad County.   Same appellant also brings a separate appeal out of DeWitt County (13-10-00667-CR).   The two cases are similar; in both appellant argues the same three grounds for reversal of his community supervision revocation.   But, because the two appeals originate from two separate counties and trials, which included different, albeit similar, testimony, we treat

(West Supp. 2011).   By two issues, appellant contends that the evidence is insufficient to support the trial court's finding that appellant violated the conditions of his community supervision by:   (1) knowingly interfering with or interrupting an emergency call;[2] and (2) possessing a firearm.   By a third issue, appellant contends that there is a fatal variance between the allegations in the State's motion to revoke community supervision regarding the grounds that appellant possessed a firearm and the evidence produced before the trial court on this allegation.   We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

A grand jury indicted appellant for theft of property valued at $1,500 or more and less than $20,000, which is a state-jail felony.[4]   Appellant pleaded guilty, and, pursuant to a plea bargain, the trial court placed him on deferred-adjudication community supervision for a five-year term.   The State subsequently filed a motion to revoke appellant's unadjudicated community supervision based on alleged violations of the community-supervision conditions, and proceeded to a hearing before the trial court on the following three allegations:

> On or about April 1, 2010, in Goliad County, Texas, said Defendant committed the criminal offense of interfering with an emergency call, to-wit:

the two appeals as separate.   Accordingly, we restrict our review of this appeal to only the testimony and evidence produced in this case's record.

[2]   *See* TEX. PENAL CODE ANN. § 42.062(a) (West 2011).

[3]   Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.   *See* TEX. R. APP. P. 47.4.   In this case, the first issue on appeal is dispositive.   We, therefore, only relate the facts that are relevant to that issue.   *See Id. at.* R. 47.1, 47.4; *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Herrera v. State*, 951 S.W.2d 197, 199 (Tex. App.—Corpus Christi 1997, no pet.).

[4]   *See* TEX. PENAL CODE § 31.03(a), (e)(4)(A).

taking the telephone away from Melissa Peterek while [she was] trying to dial 911 for assault[;]

On or about April 1, 2010, in Goliad County, Texas, said Defendant committed the federal criminal offense of possession of a firearm by a felon under indictment and after conviction[; and]

Petitioner would show that Defendant Raymond Trent Peterek has violated Condition Number Twelve (12) of his probation in that, on or about April 1, 2010, said Defendant was in possession of a firearm, to-wit: a rifle.

Appellant pleaded "not true" to all three allegations.

During the hearing, Melissa Jean Allison,[5] appellant's common-law wife, testified that on April 1, 2012, she and appellant got into a heated argument. According to Allison, she attempted to end the argument when her four-year-old daughter entered the room, but appellant cornered Allison between the sink and the stove and would not let her pass. Allison escaped by ducking under his arm. She testified, "[H]e came after me. I felt like he was chasing me down. I ran into the bedroom, into our bedroom, and I grabbed the phone and I called 911." She did not tell appellant that she was calling 9-1-1.

Allison testified that she dialed 9-1-1, "Because I felt threatened." She noted that appellant did not hit, injure, touch, or assault her on this occasion, and that he did not verbally threaten her. But, when asked whether she felt like it was an emergency that prompted her 9-1-1 call, she responded, "I did." After further questioning, she

---

[5] At appellant's trial, Melissa Jean Allison identified herself as "Melissa Jean Allison." Although she was addressed as "Ms. Allison" and "Mrs. Peterek" interchangeably during her testimony, she noted at the beginning of her testimony that she had never gone by the name "Melissa Peterek." When asked, "You're not ever known as Melissa Peterek?" she responded, "No. I am common law married to Trent Peterek, but I've never gone by the last name of Peterek." Moreover, she emphasized that no one addressed her as "Melissa Peterek." Given that her testimony is headed, "Melissa Jean Allison" and she provided the same name at the beginning over her testimony, we will, as a convenience and in effort to distinguish her from appellant, refer to her by this name rather than "Peterek." However, quotes from the record that refer to her as "Mrs. Peterek" are retained.

emphasized that she called 9-1-1 because, "I felt threatened. I felt threatened." Later, in response to questioning from defense counsel, she stated that she placed the call because she felt threatened with imminent bodily injury. On re-direct examination, the following exchange occurred:

Q: . . . Mrs. Peterek, when you ran from Trent [appellant] and ran for the phone, were you afraid that if you didn't get the police there that you might be assaulted by him.

A: I was.

Q: Okay. And that was the reason you called 911?

A: Yes, sir.

According to Allison's testimony, appellant grabbed the telephone out of her hands after she dialed 9-1-1, but before she was able to speak with the dispatcher who answered the call. The dispatcher was Tammy Oliver. Oliver testified about the call, stating, "I could hear a female screaming, a young female child screaming, and I heard a male voice in the background, stating that if you call the cops on me, Melissa, it will be your worst mistake. And there was lots of screaming again." She stated that she heard the male voice say that "Melissa was pathetic and you can't have me arrested. And then it was lots more screams." Before the call ended, Oliver heard "a lot of noise in the background, screaming, buttons being pushed, and then it was disconnected."

Oliver further testified that in response to the telephone call, she dispatched police officers to the address that her computer provided as the listed address for that telephone number. She stated that she received a second call from the same number and address, and a man, who identified himself as "Trent Peterek," and whose voice Oliver recognized

4

as the male voice from the previous call, assured Oliver that "everything is okay." At the hearing, the State played audio recordings from both telephone calls.

Allison testified that after appellant grabbed the telephone out of her hands, she ran out of her mobile home and to her step-father's travel trailer, which was located about one-hundred yards away. She asked her step-father to call 9-1-1, which he did despite requests from appellant, who had followed Allison to the trailer, not to call law enforcement. Shortly thereafter, police officers arrived.

Randy Zaruba, a community-supervision officer who supervised appellant, testified that it would be a violation of appellant's community supervision to violate a Texas or United States law. At the conclusion of the hearing, the trial court found the State's first and third allegations to be true and sentenced appellant to two years' confinement in the Texas Department of Criminal Justice, State Jail Division. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's order revoking community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (en banc) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). The State bears the burden of showing by a preponderance of the evidence that the defendant committed a violation of his community-supervision conditions. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Jones v. State*, 112 S.W.3d 266, 268 (Tex. App.—Corpus Christi 2003, no pet.). If the State does not meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

5

Proof by a preponderance of the evidence of any one of the alleged violations of the community-supervision conditions is sufficient to support a revocation order. *Moore*, 605 S.W.2d at 926; *Herrera*, 951 S.W.2d at 199. The trial court is the trier of facts in a revocation proceeding and is the sole judge of the credibility of the witnesses and the weight to be given to the testimony. *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We examine the record of the revocation proceeding in the light most favorable to the trial court's ruling. *Id.*

### III. APPLICABLE LAW

Under the Texas Penal Code, it is an offense to knowingly prevent or interfere with a person's ability to place an emergency telephone call. *See* TEX. PENAL CODE ANN. § 42.062(a) (West 2011). The Texas Penal Code defines "knowingly" in the following manner:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(b). An "emergency" is:

> A condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault or in which property is or is reasonably believed by the individual making the telephone call to be in imminent danger of damage or destruction.

*Id.* § 42.062(d). A reasonable belief is one "that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(42). Assault is the intentional, knowing, or reckless cause or threat of bodily injury to another, or the

6

intentional or knowing physical contact with another that is known or reasonably believed to be offensive or provocative to that person. *Id.* § 22.01(a).

## IV. DISCUSSION

Appellant contends that the trial court abused its discretion in finding that he knowingly interfered or interrupted an emergency call because the evidence was insufficient to support both the existence of an emergency and the knowing interference or interruption. We disagree.

In support of his contention that no evidence supports the finding that an emergency existed, appellant relies on *Matlock v. State*, No. 12-05-00413-CR, 2006 Tex. App. LEXIS 6753 (Tex. App.—Tyler Jul. 31, 2006, no pet.) (mem. op., not designated for publication). In *Matlock*, our sister appellate court ruled that the evidence was insufficient to support the finding that an emergency existed. *See id.* at *8. The *Matlock* Court premised its conclusion on the fact that the record included no direct testimony of fear of imminent assault. *See id.* at *5–8. In that case, the defendant's wife called 9-1-1 because she heard her child say, "Daddy," which indicated that her husband, who lived apart from her at that time, was in the house. *Id.* at *2. With her cordless telephone in hand, she walked into the hall, and the defendant grabbed the telephone away from her and hung up. *Id.* The appellate court noted that "the record before us is devoid of any evidence that Lisa [the defendant's wife] was afraid of [the defendant]." *Id.* at *6. The *Matlock* Court emphasized, "The record includes no direct evidence that Lisa was afraid of the defendant nor does the record contain any facts or circumstances from which we might infer that when Lisa made the call she reasonably feared she was in danger of

7

imminent assault." *Id.* at *7.

Here, unlike in *Matlock*, there is evidence that appellant's wife was afraid. Therefore, the trial court did not abuse its discretion in finding that an emergency existed and that appellant knowingly interfered with or interrupted the call. The trial court heard Allison testify that appellant cornered her during a heated argument and pursued her when she ran away. It heard her describe how she felt at the time she called 9-1-1; she expressed three times that she had felt threatened, and her testimony indicates that she called 9-1-1 because she felt it was an emergency and feared bodily injury and assault. In addition, Oliver testified that she received a 9-1-1 call and recognized appellant's later-identified voice say, "[I]f you call the cops on me, Melissa, it will be your worst mistake," and "you can't have me arrested." Oliver stated that she heard screaming and buttons being pressed before the call was abruptly disconnected. In addition, the trial court heard audio recordings of the 9-1-1 calls.

We hold that the trial court did not abuse its discretion in finding that the evidence supported, by a preponderance of the evidence, that an emergency existed and that appellant knowingly interfered or interrupted with an emergency call. *See Jones*, 112 S.W.3d at 268 (ruling trial court is sole judge of witness credibility and weight given testimony); *Canseco*, 199 S.W.3d at 439 (same); *see also Jackson v. State*, 287 S.W.3d 346, 350–52 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding evidence sufficient to support beyond reasonable doubt finding that the defendant interfered with emergency telephone call based in part on complainant's testimony, "I thought [the defendant] was

8

going to hurt me," and that the defendant said, "[B]itch, you going to call the cops, I'm going to give you something to call the cops for.").

Because the trial court had sufficient evidence to find by a preponderance of the evidence that an emergency existed and that appellant knowingly interfered or interrupted an emergency telephone call, we overrule appellant's first issue on appeal. Given that only one finding is necessary to support a revocation of community supervision, it is unnecessary for us to address appellant's other two issues. *See* TEX. R. APP. P. 47.1, 47.4; *Moore*, 605 S.W.2d at 926; *Herrera*, 951 S.W.2d at 199.

## V. CONCLUSION

We affirm the trial court's judgment revoking appellant's community supervision.

GREGORY T. PERKES
Justice

Do not publish.   TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of August, 2012.